UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD OF INDIANA AND KENTUCKY, INC. and DR. MARSHALL LEVINE,<br>　　*Plaintiffs,* | )<br>)<br>)<br>) | Case No. 1:16-cv-00763-TWP-DML |
| | ) | |
| vs. | )<br>) | |
| COMMISSIONER, INDIANA STATE DEPARTMENT OF HEALTH in his official capacity,<br>PROSECUTORS OF MARION, LAKE, MONROE, and TIPPECANOE COUNTIES, INDIANA, in their official capacities, and THE INDIVIDUAL MEMBERS OF THE MEDICAL LICENSING BOARD OF INDIANA, in their official capacities,<br>　　*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| ————————————————— | )<br>) | |
| TRUSTEES OF INDIANA UNIVERSITY, FRED H. CATE, DR. BRUCE LAMB, and DR. DEBOMOY LAHIRI,<br>　　*Proposed Intervenor Plaintiffs,* | )<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| vs. | )<br>) | |
| PROSECUTOR OF MARION COUNTY, INDIANA, in his official capacity,<br>　　*Proposed Intervenor Defendant.* | )<br>)<br>)<br>) | |

## Order on IU Plaintiffs' Motion to Intervene

This matter is before the court on an amended motion to intervene under Fed. R. Civ. P. 24 filed by the Board of Trustees of Indiana University, Fred H. Cate, and research faculty Dr. Bruce Lamb and Dr. Debomoy Lahiri (collectively, "IU" or "Proposed Plaintiffs" unless the context requires otherwise).  IU seeks to intervene as of right under Rule 24(a)(2) or, alternatively, with permission under Rule 24(b).  The defendants oppose intervention; the original plaintiffs do not.  For the reasons explained below, the court DENIES the amended motion (Dkt. 41) to intervene.

## Background

On March 24, 2016, Indiana Governor Mike Pence signed into law House Enrolled Act No. 1337 (the "Act"), which will go into effect on July 1, 2016.  The Act, which amends several existing sections of the Indiana Code and adds new statutes, primarily concerns abortions.  On April 7, 2016, Planned Parenthood of Indiana and Kentucky, Inc. ("PPINK") and Dr. Marshall Levine, a physician who performs abortions for PPINK's patients, filed a complaint[1] asking the court to declare that certain provisions of the Act are unconstitutional and unenforceable.  (Unless the context requires otherwise, the court will refer to PPINK and to Dr. Levine collectively as "PPINK.")  The court will first briefly describe PPINK's claims, and then the claims the IU Proposed Plaintiffs seek intervention to assert in this case.

---

[1]      Another plaintiff, a nurse employed by PPINK, was voluntarily dismissed because her employment is expected to end soon.  *See* Dkts. 22 (motion) and 23 (order dismissing Shauna Sidhom as plaintiff).

## A.    PPINK's Claims

PPINK seeks a preliminary (and permanent) injunction against the enforcement of certain provisions of the Act.  PPINK challenges:

(1)    The group of provisions that ban all abortions, irrespective of the duration of pregnancy, if the person performing the abortion knows that the pregnant woman is seeking the abortion solely because of certain forbidden reasons. The forbidden reasons are sex, race, color, national origin, and ancestry; diagnosis or "potential diagnosis"[2] of Down syndrome; and diagnosis or "potential diagnosis" of "any other disability."[3]  (*See* Ind. Code §§ 16-34-4-5 (sex); 16-34-4-8 (race, color, national origin, ancestry), 16-34-4-6 (Down syndrome), and 16-34-4-7 (any other disability) (all eff. July 1, 2016)).  PPINK contends these provisions, as applicable to abortions before a fetus's viability, violate the Due Process clause of the Fourteenth Amendment by "placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus."  *See* PPINK Motion for Preliminary Injunction, Dkt. 30, at p. 11 (citing *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833 (1992) (plurality); *Roe v. Wade,* 410 U.S 113 (1973)).

(2)    A new subsection of the informed consent law, which requires a pregnant woman's physician or the physician's designee to tell the woman that

---

[2]    "Potential diagnosis" means the "presence of some risk factors that indicate that a health problem may occur."  Ind. Code § 16-34-4-3 (eff. July 1, 2016).

[3]    "Any other disability" means any genetically-inherited disease, defect, or disorder, including physical disability, disease, or disfigurement, mental or intellectual disability or mental disease, scoliosis, Dwarfism, Down syndrome, Albinism, and Amelia.  Ind. Code § 16-34-4-1 (eff. July 1, 2016).

Indiana "does not allow" abortion solely because of any of the forbidden reasons.

Ind. Code § 16-34-2-1.1(a)(1)(K) (eff. July 1, 2016).  PPINK challenges this new

informed consent provision as unconstitutionally compelled speech that violates the

First Amendment.

(3)      The provisions requiring an abortion clinic to assume responsibility for

and to dispose of embryonic and fetal tissue from abortions by interment (burial) or

cremation performed in a crematory.  (*See* new or amended sections, effective July

1, 2016, of Ind. Code §§ 16-41-16-7.6, 16-21-11-6, and 16-34-3-4).  PPINK contends

the new disposition requirements for embryonic and fetal tissue are irrational and

violate the Due Process and Equal Protection provisions of the Fourteenth

Amendment.

**B.**      **IU's Claims**

IU's proposed intervention complaint seeks a preliminary (and permanent)

injunction against the enforcement by the office of the Marion County Prosecutor of

a provision of the Act different from those challenged by PPINK:  the provision that

criminalizes as a level five felony the actions of a person "who intentionally

acquires, receives, sells, or transfers [aborted] fetal tissue. . . ."  (Ind. Code § 35-46-

5-1.5(d) (eff. July 1, 2016).  Fetal tissue is defined to include "tissues, organs, or any

other part of an aborted fetus."  (Ind. Code § 35-46-5-1.5(b)).

According to their complaint, the IU plaintiffs conduct, or oversee the

performance of, scientific research using fetal stem cells, primarily under the

auspices of the Stark Neurosciences Research Institute, which is located in Marion

County, Indiana. IU and Dr. Lahiri are currently conducting Alzheimer's and autism research using fetal tissue acquired and received from the Birth Defects Research Laboratory at the University of Washington, which obtained the fetal tissue from both elective abortions and miscarriages.[4] The Stark Neurosciences Research Institute also possesses "biologicals" (DNA, RNA, and proteins) that could have been derived from fetal tissue. IU contends that because of the very nature of scientific research, including (a) the sharing of research samples for peer review or other research protocols and (b) a scientist's change of employment or lab and the transfer of her research samples to a new lab for continuing and completing her research, the criminal statute threatens to criminalize its past and current research activities, impair the academic freedom of its scientists, and essentially shut down its work to uncover treatment and cures for patients with neurological disorders.

IU contends the criminal statute is unconstitutional because (a) it is vague, (b) it imposes an excessive burden on interstate commerce, and (c) it violates Dr. Lahiri's First Amendment right to academic freedom.

These descriptions of PPINK's and IU's claims reveal that they do not share the same factual and legal underpinnings. As explained more fully in the Analysis section below, that fact, along with the importance of orderly adjudication of PPINK's challenges to the Act, defeat IU's request for intervention as of right.

---

[4] The criminal statute appears to except from its purview tissue from certain types of "miscarriages": those resulting from the termination of human pregnancy that was intended to produce a live birth. *See* Ind. Code § 35-46-5-1.5(a) (eff. July 1, 2016).

These, as well as some additional considerations, also lead the court to deny

permissive intervention.  But the defendants—who opposed intervention in part

because of the difficulty of preparing and presenting defenses on an expedited basis

to multiple challenges to the Act—should not interpret this denial as a reprieve.

The court assumes that IU will (and indeed *must*, if it continues to seek preliminary

injunctive relief) file a separate case immediately.  And though the scheduling order

that governs this case cannot be duplicated in all respects for adjudicating IU's

separate claims, this alone does not foreclose determination of IU's motion for

preliminary injunction on an expedited basis.  The defendants and their counsel

should be prepared to devote the resources necessary to litigate challenges to the

constitutionality of the Act—laws they knew would elicit requests for preliminary

injunctive relief before July 1.

## Analysis

**A.     The IU Plaintiffs are not entitled to intervene as of right under Rule 24(a)(2).**

Under Fed. R. Civ. P. 24(a)(2), a district court must permit a person to

intervene when the person shows that (1) his motion for intervention is timely; (2)

he has an "interest" in the property or transaction that is the subject of the

litigation; (3) disposition of the litigation may, as a practical matter, impede or

impair his ability to protect that interest; and (4) no existing party adequately

represents his interest.  *Security Ins. Co. v. Schipporeit, Inc.,* 69 F.3d 1377, 1380 (7th

Cir. 1995).

### 1.  Timeliness

"The timeliness requirement forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute."  *Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 797 (7th Cir. 2013).  Whether an intervention motion is timely depends on examining the totality of the circumstances.  *Schultz v. Connery,* 863 F.2d 551, 553 (7th Cir. 1988).

Discovery, expert disclosures, and briefing deadlines have already been set in this case (*see* order entered April 26, 2016), as has the preliminary injunction hearing, which is scheduled for June 14, 2016.  At least some of the pre-hearing deadlines could not possibly be accommodated if IU were permitted to intervene. The written discovery deadline has passed, as has the defendants' expert disclosure deadline. The court is not willing to change these dates or add new dates to accommodate IU; in that sense, therefore, IU's motion is not timely.[5]  The court emphasizes, however, that the IU Plaintiffs can file their own separate case and seek preliminary injunctive relief on a timetable consistent with the exigencies of the July 1 effective date of the Act.

### 2.  Impairment of Interest and Inadequate Representation

The other three factors under Rule 24(a)(2)—all of which concern the nature of IU's "interest" and whether it would be impaired absent intervention—also counsel the denial of IU's motion to intervene.

---

[5]     Briefing on the intervention issue includes arguments about what the defendants characterize as IU's undue delay in asserting its claims and in seeking intervention.  The court need not, and does not, make any finding in that regard.

Neither Rule 24(a)(2) nor the decisions applying it precisely define the "interest" element of the rule.  Further, even though the rule states that the "interest" must be an interest in "property" or a "transaction" that is the subject of the litigation, courts have not limited intervention as of right to cases regarding disputes about particular property or a specific transaction but have required only that the proposed intervener have an interest relating to the "subject matter" of the litigation.  *See Nissei Sangyo America, Ltd. v. United States,* 31 F.3d 435, 438 (7th Cir. 1994).  That interest must be "direct, significant, and legally protectable," but it need not be a property right.  *Security Ins.,* 69 F.3d at 1380-81.

Whatever the contours of the kind of "interest" contemplated by Rule 24, the court agrees with the defendants that IU has an "interest" in the subject matter of PPINK's litigation at too general a level to meet the standards for intervention as of right.  The commonality between the two sets of claims is only that both groups bring constitutional challenges to statutes that were enacted as part of one Enrolled Act, the focus of which is the restriction of abortions.  But the criminal statute challenged by IU is unrelated to the statutes challenged by PPINK, and the constitutional theories advanced in the two cases are not the same.  The evidence—expert and otherwise—can be expected to be different.  A ruling on PPINK's claims would not resolve IU's claims, nor would a ruling on IU's claims resolve PPINK's.  As succinctly put by the defendants, PPINK and IU do not "assert overlapping rights, as IU raises vagueness, commerce clause and academic freedom claims, while PPINK raises reproductive rights, coerced speech and equal protection

claims." (Dkt. 48 at p. 8). For these reasons, a ruling in this case on PPINK's challenges—favorable or unfavorable—will not have a preclusive effect on IU's claims and will not as a legal or practical matter "impair or impede" IU's ability to protect its interests. And though, of course, PPINK would not be an adequate representative of IU's interests, that is because their interests do not overlap in "a subject matter" in any sort of meaningful sense contemplated by Rule 24(a)(2).

**B.    The court will not permit intervention under Rule 24(b).**

Even if intervention is not appropriate as a matter of right, subsection (b)(1)(B) of Rule 24 allows the court "on timely motion" to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Though the court has no doubt some facts—even if just background facts—may overlap among PPINK's and IU's claims, other factors convince the court in its discretion to deny IU's alternative request for permissive intervention under Rule 24(b). *Security Ins.,* 69 F.3d at 1381 (7th Cir. 1995) (permissive intervention is an entirely discretionary decision which may be guided by whether existing parties would be prejudiced).

First, because IU challenges a different statute under different constitutional theories from those raised by PPINK, allowing its participation as a party in PPINK's case would unnecessarily complicate this litigation and threaten to delay its resolution, to the prejudice of the existing parties.

Second, IU has not convinced the court that judicial economy is served by permitting its intervention. It incorrectly assumes that in the absence of

intervention, its separate case would be assigned to the same judge presiding over this one.  That is not necessarily so.  Moreover, the judicial economy inquiry focuses on the wise use of the court's resources.  That focus may militate in favor of IU's challenge to the Act being heard by the district judge who randomly draws it; it may strain the resources of a single judge to manage and decide two very different sets of claims on an expedited basis.[6]  And litigating the claims in separate cases would not result in material duplication of effort because there is barely any overlap in pertinent facts or law.

Finally, allowing IU to participate in this case would disrupt the orderly presentation of facts and law in this case *and* in IU's case.

All that said—and to repeat—denial of IU's motion to intervene does not foreclose IU from filing its own case or seeking an expedited schedule for discovery and resolution of its preliminary injunction motion before July 1.

## Conclusion

For the foregoing reasons, the motion (Dkt. 41) by IU to intervene as of right or, alternatively, with permission, is DENIED.

So ORDERED.

Date: May 24, 2016

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

---

[6]     To be clear, this magistrate judge is not deciding the assignment question.

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system