UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD OF | ) | |
| INDIANA AND KENTUCKY, INC.; | ) | |
| DR. CAROL DELLINGER, M.D.; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-763-TWP-DML |
| | ) | |
| COMMISSIONER, INDIANA STATE | ) | |
| DEPARTMENT OF HEALTH, in his | ) | |
| official capacity; | ) | |
| PROSECUTORS OF MARION, LAKE, | ) | |
| MONROE, and TIPPECANOE COUNTIES, | ) | |
| INDIANA, in their official capacities; | ) | |
| THE INDIVIDUAL MEMBERS OF | ) | |
| THE MEDICAL LICENSING BOARD | ) | |
| OF INDIANA, in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**Second Amended Complaint for Declaratory and Injunctive Relief / Notice of Challenge to Constitutionality of Indiana Statute**

**Introduction**

1.      Recently enacted Indiana House Enrolled Act No. 1337 ("Enrolled Act"), signed into law by the Governor of the State of Indiana on March 24, 2016, and effective on July 1, 2016, imposes unprecedented restrictions on abortion.  Among other things, it prohibits abortions, even in the first trimester, if the sole reason for the abortion is the fetus's race, color, national origin, ancestry, sex, or diagnosis of a statutorily-defined "disability" or "potential diagnosis" of a "disability." The new law requires that women must be informed of this prohibition as part of Indiana's state-mandated so-called "informed consent" process.  The Enrolled Act further provides that an abortion clinic or health care facility must not dispose of fetal tissue after an

abortion or miscarriage in the same manner as other medical material.

2.      The Enrolled Act therefore imposes an undue burden on a woman's right to choose an abortion because it bars that choice under certain circumstances, even if the pregnancy is in its early stages and the fetus is not viable. Compelling employees of abortion clinics to inform women as part of the informed consent process of something that is clearly unconstitutional is, in turn, unconstitutionally compelled speech that violates the rights of both the clinic and its employees and patients.

3.      The Enrolled Act imposes burial or cremation requirements on fetal tissue when an abortion or completion of a miscarriage takes place in a clinic such as Planned Parenthood of Indiana and Kentucky ("PPINK") but not when the woman assumes control of such tissue that is less than 20 weeks post fertilization.  It mandates that the fetal tissue after a first-trimester abortion or a miscarriage be treated differently than other medical material.  These distinctions violate both due process and equal protection.

4.      Appropriate injunctive and declaratory relief must issue against the unconstitutional portions of the Enrolled Act.

**Jurisdiction, venue, cause of action**

5.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1343.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

7.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

8.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

9.     Planned Parenthood of Indiana and Kentucky is a not-for-profit corporation with its principle place of business in Indiana.  It brings this action on its own behalf and on behalf of its employees and patients.

10.     Dr. Carol Dellinger is a physician contracted by Planned Parenthood of Indiana and Kentucky who performs abortions and assists patients with the management of miscarriages.

11.     The Commissioner of the Indiana State Department of Health is the duly appointed official in charge of that agency, which is responsible for licensing abortion clinics pursuant to Indiana law.  He is sued in his official capacity and is designated by his official title pursuant to Fed. R. Civ. P. 17(d).

12.     The Prosecutors of Marion, Lake, Monroe, and Tippecanoe Counties, Indiana, are the duly elected prosecutors of the counties in which Planned Parenthood of Indiana and Kentucky health centers that provide abortion services are located and the prosecutors are responsible for prosecuting crimes occurring in their respective counties.   They are sued in their official capacities and are designated by their official title pursuant to Fed. R. Civ. P. 17(d).

13.     The Individual Members of the Medical Licensing Board of Indiana comprise the body that licenses and disciplines physicians in Indiana. They are sued in their official capacities and are designated by their official title pursuant to Fed R. Civ. P. 17(d).

**Legal background**

14.     The Enrolled Act amends Indiana law to specifically provide that a person may not intentionally perform or attempt to perform an abortion at any time, including before the earlier of viability or 20 weeks of postfertilization age, if the person knows that the pregnant woman is seeking the abortion solely because:

- of the sex of the fetus
- the fetus has been diagnosed with Down syndrome or has a potential diagnosis of Down

syndrome
- the fetus has been diagnosed with any other disability or has a potential diagnosis of any other disability
- of the race, color, national origin, or ancestry of the fetus.

Ind. Code § 16-34-4-1, *et seq.* (eff. July 1, 2016).  *See also* Ind. Code § 16-34-2-1 (as amended eff. July 1, 2016).

15.     The Enrolled Act defines "potential diagnosis" as "refer[ing] to the presence of some risk factors that a health problem may occur." Ind. Code § 16-34-4-3 (eff. July 1, 2016).

16.     The Enrolled Act defines "any other disability" as:

any disease, defect, or disorder that is genetically inherited. The term includes the following:

     (1)     A physical disability.
     (2)     A mental or intellectual disability.
     (3)     A physical disfigurement.
     (4)     Scoliosis.
     (5)     Dwarfism.
     (6)     Down syndrome.
     (7)     Albinism.
     (8)     Amelia.
     (9)     A physical or mental disease.

Ind. Code § 16-34-4-1(a) (eff. July 1, 2016).

17.     Indiana Code § 16-34-2-1.1 mandates various things that the State of Indiana requires that a pregnant woman be told before she may give "informed consent" to obtaining an abortion.

18.     Effective July 1, 2016, the Enrolled Act amended the statute to provide that the woman must be told, in private, that, among other things, "Indiana does not allow a fetus to be aborted solely because of the fetus's race, color, national origin, ancestry, sex, or diagnosis or potential diagnoses of the fetus having Down syndrome or any other disability."  Ind. Code § 16-34-2-1.1(a)(1)(K) (eff. July 1, 2016).

19.     A physician who knowingly or intentionally performs one of these prohibited abortions

may be subjected to disciplinary sanctions by the Medical Licensing Board as well as civil liability for wrongful death. Ind. Code § 16-34-4-9 (eff. July 1, 2016).

20.     Indiana law also provides that performing an abortion not allowed by Indiana law is a felony. Ind. Code § 16-34-2-7(a).

21.     Additionally, performing an abortion without the "informed consent" required by Indiana Code 16-34-2-1.1 is a Class A infraction. Ind. Code § 16-34-2-7(c).

22.     The performing of an illegal abortion may lead to the denial of the licenses issued to abortion clinics by the Indiana State Board of Health that are required under Indiana law for the clinics to remain in operation. Ind. Code § 16-21-2-2.5; 410 IAC 26-2-5.

23.     Every health care provider performing an abortion must complete and sign a terminated pregnancy report created by the Indiana State Department of Health that, as of July 1, 2016, requires that the provider note the gender of the fetus, if it is detectable, and "[w]hether the fetus has been diagnosed with or has a potential diagnosis of having Down syndrome or any other disability."  Ind. Code § 16-34-2-5(a)(6)(C), (D) (eff. July 1, 2016).

24.     Failure to complete the terminated pregnancy report is a crime, Ind. Code § 16-34-2-5(d), and can also lead to sanctions against the health care provider by the Medical Licensing Board.

25.     The Enrolled Act further provides that "[a]n abortion clinic or health care facility having possession of an aborted fetus shall provide for the final disposition of the aborted fetus. The burial transit permit requirements of IC 16-37-3 apply to the final disposition of an aborted fetus, which must be interred or cremated."  Ind. Code § 16-34-3-4(a) (eff. July 1, 2016).  The Enrolled Act imposes the same disposition requirements on facilities for fetal tissue that is the result of a miscarriage.  *See* Ind. Code § 16-21-11-6(b) (eff. July 1, 2016).  This has the effect of requiring the abortion clinic or health care facility to arrange, and pay for, disposition of fetal tissue after

an abortion or miscarriage, regardless of gestational age, in a manner substantially similar to the burial or cremation of human bodies.

26.     Indiana law allows the woman to assume control of the fetal tissue after the abortion or miscarriage and does not impose any of the above requirements if the woman chooses to assume this control. Ind. Code §§ 16-34-3-2 (as amended July 1, 2016); 16-21-11-5 (as amended July 1, 2016); Ind. Code § 16-34-3-3 (as amended July 1, 2016); 16-21-11-6 (as amended July 1, 2016).

27.     At the current time the term "pathological waste," which can be disposed of without burial or cremation, is defined to include:

      (1)     tissues;
      (2)     organs;
      (3)     body parts; and
      (4)     blood or body fluids in liquid or semiliquid form;

      that are removed during surgery, biopsy, or autopsy.

Ind. Code § 16-41-16-5.

28.     The Enrolled Act amends the above statute to provide that the term "pathological waste" "does not include an aborted fetus or a miscarried fetus." Ind. Code § 16-41-16-5 (eff. July 1, 2016).

**Factual allegations**

29.     Planned Parenthood of Indiana and Kentucky, Inc. ("PPINK"), operates a number of health centers in Indiana and Kentucky where thousands of women, men, and teens receive reproductive health care services and comprehensive sexuality education.

30.     At the current time PPINK operates three health care centers or clinics in Indiana, located in Bloomington, Merrillville, and Indianapolis, that offer surgical abortion services.

31.     Additionally, PPINK operates a health center in Lafayette, Indiana, that provides abortions using medications alone (*i.e.*, "medication" or "non-surgical" abortions).

32.     At PPINK, surgical abortions are available through the first trimester of pregnancy, 13 weeks and 6 days after the first day of a woman's last menstrual period, as determined by ultrasound.   The fetus cannot be viable at this point.

33.     Medication abortions are currently available through 63 days (9 weeks) after the first day of a woman's last menstrual period.

34.     Approximately five times a month, a patient, who originally came to PPINK for an abortion, arrives at a PPINK facility and is experiencing a miscarriage.   Under Indiana law, a "miscarried fetus" is defined as "an unborn child, irrespective of gestational age, who has died from a spontaneous or accidental death before expulsion or extraction from the unborn child's mother, irrespective of the duration of the pregnancy."   Ind. Code § 16-21-11-2.   When this occurs, PPINK may complete the miscarriage at the PPINK health center.

35.     PPINK employs and contracts with physicians who perform the abortions and assist patients with the management of miscarriages in Indiana.

36.     Because women have a right to choose a first trimester abortion for any reason, PPINK does not inquire of its patients why they are obtaining abortions.   However, PPINK is aware that some of its patients seek abortions for a reason banned by the Enrolled Act.   PPINK has performed abortions for patients who have been referred to PPINK solely because genetic anomalies or potential genetic anomalies had been detected in the fetus and PPINK anticipates performing such abortions in the future.

37.     As noted, the Enrolled Act, Ind. Code § 16-34-2-5(a)(6)(D) (eff. July 1, 2016), requires that the health care provider performing the abortion certify on the terminated pregnancy report whether the fetus was diagnosed with, or has a potential diagnosis of, a "disability" as defined by the Enrolled Act.

38.     PPINK staff members gather much of the information that is reported on the terminated pregnancy report prior to the abortion.

39.     Therefore, PPINK staff will learn prior to the abortion if the fetus is diagnosed with, or has a potential diagnosis of, a disability as defined by the Enrolled Act. This will place PPINK and its staff, including Dr. Dellinger, at risk of prosecution, civil liability, and loss of licensure for performing an abortion in violation of the prohibitions in the Enrolled Act.

40.     Dr. Dellinger feels very strongly that a woman has an absolute right to obtain an abortion from PPINK without the restrictions imposed by the Enrolled Act and wishes to be able to continue to perform these abortions.

41.     On behalf of its patients, PPINK objects to the Enrolled Act insofar as it restricts the ability of the patients to have a first trimester abortion.

42.     At the current time, consistent with Indiana law, the "informed consent" information is provided to PPINK's patients by physicians and nurse practitioners.

43.     PPINK, on its own behalf and on behalf of its employees, strongly objects to having to participate in informing women that Indiana law prohibits an abortion solely because of the fetus's race, color, national origin, ancestry, sex, or diagnosis or potential diagnosis of the fetus having a disability as they believe that they are being forced to inform patients of something that is clearly unconstitutional.

44.     Inasmuch as the requirement is clearly unconstitutional the burden imposed on the PPINK employees who provide the informed consent information is not a reasonable licensing regulation by the State of Indiana.

45.     On behalf of its patients PPINK objects to the patients having to hear this unconstitutional information.

46.     Prior to the Enrolled Act, when a surgical abortion was performed, or a miscarriage completed, PPINK would dispose of the fetal tissue by having a contractor remove and dispose of it the same as other medical material.  This is the same method that other medical facilities generally use to dispose of medical waste.

47.     Because of the preliminary injunction issued in this case, PPINK continues to dispose of fetal tissue from abortion procedures in this manner.

48.     Since July 1, 2016, however, PPINK has been forced to refer women who are experiencing miscarriages to other providers.

49.     Both prior to the Enrolled Act and after, the woman has the right to determine the final disposition of the fetal tissue, Ind. Code §§ 16-34-3-2, 16-21-11-5, and may elect to have PPINK be responsible for the costs of the final disposition of the fetal tissue after a surgical abortion or a miscarriage unless the woman chooses a different method, in which case she is responsible for the costs. Ind. Code §§ 16-34-3-3, 16-34-3-6.

50.     In PPINK's experience virtually all women who have surgical abortions or miscarriages choose to have PPINK dispose of the fetal tissue.

51.     Under the Enrolled Act PPINK, in the event the preliminary injunctive is lifted, will have to engage in significantly greater efforts to dispose of the fetal tissue. It will have to obtain a burial transit permit for the fetal tissue, Ind. Code §§ 16-34-3-4(a); 16-21-11-6(b) (eff. July 1, 2016), which is not required for the disposal of other medical material. It will then have to make arrangements with a mortuary to receive and handle the fetal tissue.

52.     In all probability PPINK will choose to have the fetal tissue cremated.  However, unlike the disposal of other medical material, once the fetal tissue is cremated PPINK would have to assume responsibility of the cremated products and arrange for their permanent interment or

committal.

53.    This would require PPINK to incur additional costs and expend additional resources that do not have to be incurred and expended in the disposal of other forms of medical material.

54.    The Enrolled Act has not altered the fact that if the woman chooses to assume control of the fetal tissue from an abortion that is less than 20 weeks after fertilization, or from completion of a miscarriage, the woman does not need to bury or cremate the fetal tissue and may dispose of it as she sees fit.

55.    The actions and threatened actions of the defendants are causing, and will continue to cause, plaintiffs, including the staff and patients of PPINK, irreparable harm for which there is no adequate remedy at law.

56.    At all times defendants have acted under color of state law.

**Legal claims**

57.    The Enrolled Act's prohibition on abortions solely because of one of the reasons set out in Indiana Code § 16-34-4 (eff. July 1, 2016) creates an undue burden on the right to obtain an abortion in violation of the Fourteenth Amendment to the United States Constitution.

58.    The requirement that women seeking abortion services from PPINK are compelled to hear, effective July 1, 2016, that an abortion is prohibited if the abortion is solely because of the fetus's race, color, national origin, ancestry, sex, or diagnosis or potential diagnosis of the fetus having a disability, violates the patients' rights under the First Amendment and compelling PPINK's employees to provide that information also violates their First Amendment rights.  The government cannot compel persons to provide patently unconstitutional information.

59.    Treating the fetal tissue after a first trimester surgical abortion or a miscarriage differently, for purposes of disposal, than other medical material is irrational and violates the

Fourteenth Amendment's guarantee of equal protection and due process.  It is similarly irrational to impose burial and cremation requirements on fetal tissue after a first trimester abortion or miscarriage if the abortion or completion of the miscarriage occurs within an abortion clinic or health care facility and the clinic or facility is requested to keep the fetal tissue by the woman having the abortion or miscarriage, but not if the woman elects to retain the fetal tissue herself.

**Requested relief**

WHEREFORE, plaintiffs request that this Court:

1.      Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2.      Declare House Enrolled Act 1337 is unconstitutional to the extent it:

>       a.      Denies the ability of a woman to obtain an abortion during the first trimester of her pregnancy for the reasons noted in Indiana Code § 16-34-4-5 (eff. July 1, 2016) through Indiana Code § 16-34-4-8 (eff. July 1, 2016).

>       b.      Requires as part of the "informed consent" process that women seeking abortions be informed that they are unable to obtain an abortion if their sole reason for doing so is because of the fetus's race, color, national origin, ancestry, sex, or diagnosis or potential diagnosis of the fetus having a disability. Ind. Code § 16-34-2-1.1(a)(1)(K) (eff. July 1, 2016).

>       c.      Requires fetal tissue after a first trimester abortion or a miscarriage to be treated by the abortion provider differently than other medical material. Ind. Code §§ 16-34-3-4, 16-21-11-6 (eff. July 1, 2016); Ind. Code § 16-41-16-1(a)(16) (eff. July 1, 2016); Ind. Code § 16-41-16-4(d) (eff. July 1, 2016); Ind. Code § 16-41-16-7.6 (eff. July 1, 2016).

3.      Enter a preliminary injunction, later to be made permanent, against defendants from enforcing Indiana Code § 16-34-2-1.1(a)(1)(K)(eff. July 1, 2016), Indiana Code §§ 16-34-4-6 (eff. July 1, 2016), Ind. Code § 16-34-4-7 (eff. July 1, 2016), and all portions of House Enrolled Act 1337 that require that fetal tissue after a first trimester abortion or miscarriage be treated differently than other surgical byproducts.

4.      Award plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

5.      Award all other proper relief.

s/ Kenneth J. Falk

Kenneth J. Falk
No. 6777-49


s/ Gavin M. Rose

Gavin M. Rose
No. 26565-53


s/ Jan P. Mensz

Jan P. Mensz
ACLU of Indiana
1031 E. Washington St
Indianapolis, IN 46202
317/635-4059
fax:  317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
jmensz@aclu-in.org

Jennifer Dalven
*Pro Hac Vice*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2641
jdalven@aclu.org

Helene T. Krasnoff
*Pro Hac Vice*
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
(202) 973-4800
helene.krasnoff@ppfa.org

Attorneys for Plaintiffs