UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD OF INDIANA AND KENTUCKY, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-00763-TWP-DML |
| COMMISSIONER, INDIANA STATE DEPARTMENT OF HEALTH, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**BRIEF IN SUPPORT OF EXPEDITED MOTION
TO VACATE DECLARATORY JUDGMENT AND INJUNCTION**

The declaratory judgment and injunction in this case rest on the now-defunct right to abortion and two abortion precedents securing that have now been unambiguously overruled—*Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeast Pennsylvania v. Casey*, 505 U.S. 833 (1992). In *Dobbs v. Jackson Women's Health Organization*, 597 U.S. ___, No. 19-1392 (June 24, 2022), the Supreme Court "h[e]ld that the Constitution does not confer a right to abortion." Slip op. at 69. It explained that *Roe*'s and *Casey*'s contrary holdings were "egregiously wrong," "exceptionally weak," and "deeply damaging." *Id.* at 44–45, 55–56. "*Roe* and *Casey*," the Court concluded, therefore "must be overruled," and the "authority to regulate abortion must be returned to the people and their elected representatives." *Id.* at 5, 69; *see id.* at 79.

With that change in the law, the declaratory judgment and injunction in this case can no longer stand. Those decrees prevent enforcement of Indiana statutes restricting abortions sought solely because of an unborn child's race, sex, or disability. After *Dobbs*, however, States are free to enact statutes "regulating or prohibiting abortion" at all stages of pregnancy, including statutes

1

that prohibit "discrimination on the basis of race, sex, or disability." *Dobbs*, slip op. at 78–79. There is no constitutional basis on which the declaratory judgment and injunction in this case can be maintained. The Court should promptly return to the State the authority to enforce regulations necessary to protect women and prevent discrimination.

The defendants understand that the plaintiff intends to oppose this motion. They ask that the Court require any response to be filed within 3 days.

## BACKGROUND

This case involves a challenge to Indiana Code sections 16-34-4-4, 16-34-4-5, 16-34-4-6, 16-34-4-7, 16-34-4-8, and 16-34-2-1.1(a)(1)(K). Sections 16-34-4-4 to 4-8 prohibit abortion providers from performing or attempting abortions where the provider "knows that the pregnant woman is seeking the abortion *solely because of*" a fetus has a particular race, sex, or other protected characteristic. Ind. Code § 16-34-4-8(a) (emphasis added); *see id.* §§ 16-34-4-4 to 4-8. Section 16-34-2-1.1(a)(1)(K) requires abortion providers to inform patients of that abortion restriction.

On summary judgment, this Court held those restrictions unconstitutional. ECF No. 91. It stated that the State's anti-discrimination abortion ban violated a woman's right to "obtain[] abortions before fetal viability," ECF No. 91 at 9, as recognized by *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeast Pennsylvania v. Casey*, 505 U.S. 833 (1992). In the Court's view, the anti-discrimination ban "undermine[d]" the "'central holding' of *Roe*"—that "'a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.'" ECF No. 91 at 9-10, 12 (quoting *Casey*, 505 U.S. at 870). The Court regarded the State's contrary arguments as foreclosed by the "'balance'" *Roe* and *Casey* struck. *Id.* at 11,

14. Accordingly, the Court declared the challenged statutory provisions unconstitutional and enjoined their enforcement. ECF No. 97 (original judgment); ECF No. 127 (amending judgment).[1]

On appeal, the Seventh Circuit affirmed. *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 888 F.3d 300, 302 (7th Cir. 2018). It agreed that the anti-discrimination ban "violate[d] . . . Supreme Court precedent" establishing "'a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.'" *Id.* at 305–06 (emphasis omitted) (quoting *Casey*, 505 U.S. at 879). The Seventh Circuit rejected arguments that the State's interest in preventing discrimination based on race, sex, and other protected characteristics justified the ban. *Id.* at 307. Invoking *Casey*, the court stated that "[t]he Supreme Court has been clear: the State may inform a woman's decision before viability, but it cannot prohibit it." *Id.*

What the Seventh Circuit regarded as a "clear[ly]" correct outcome, however, is now clearly incorrect. On June 24, 2022, the Supreme Court overruled *Roe* and *Casey*—the decisions underpinning the Seventh Circuit's and this Court's judgments in this case. The Supreme Court "h[e]ld that the Constitution does not confer a right to abortion"; that "*Roe* and *Casey* must be overruled"; and that the "authority to regulate abortion" now lies with "the people and their elected representatives." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. ___, No. 19-1392, slip op. at 69 (June 24, 2022). In overruling *Roe* and *Casey*, the Supreme Court specifically criticized the viability line that the Seventh Circuit and this Court deemed controlling in this case. "The viability

---

[1] The original judgment also declared unconstitutional and enjoined enforcement of Indiana Code sections 16-21-11-6, 16-34-3-4(a), 16-41-16-1, 16-41-16-4(d), 16-41-16-5 and 16-41-16-7.6. ECF No. 97. That portion of the judgment was later reversed, *Box v. Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780 (2019), and vacated, ECF No. 126.

line," the Supreme Court observed in *Dobbs*, "makes no sense," is almost "uniformly eschew[ed]" by other countries," and lacks "any cogent justification." *Id.* at 49, 53.

This motion to vacate the declaratory judgment and injunction followed.

## ARGUMENT

The Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. ___, No. 19-1392 (June 24, 2022), to overrule *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeast Pennsylvania v. Casey*, 505 U.S. 833 (1992), warrants vacatur of the declaratory judgment and injunction in this case. Under Federal Rule of Civil Procedure 60(b)(5), vacatur of a final judgment or order is warranted where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). That rule contemplates relief from a judgment where 'a significant change . . . in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). A court "abuses its discretion 'when it refuses to modify an injunction or [other] decree in light of such changes.'" *Id.* (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)). Such changes require vacatur here.

## I. The Supreme Court's Decision in *Dobbs* Significantly Changes the Law, Vitiating the Basis for the Declaratory Judgment and Injunction

The Supreme Court's overruling of *Roe* and *Casey* constitutes a "significant change in the law," negating the basis for the declaratory judgment and injunction in this case. Both this Court and the Seventh Circuit reasoned that the State's anti-discrimination abortion ban was unconstitutional because it was contrary to *Casey*'s and *Roe*'s "central holding" that "'a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.'" *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 888

F.3d 300, 305–06 (7th Cir. 2018) (quoting *Casey*, 505 U.S. at 879); *see* ECF No. 91 at 9–10, 12 (similar). After *Dobbs*, however, that holding is no longer good law.

In *Dobbs*, the Supreme Court "h[e]ld that the Constitution does not confer a right to abortion," and "overruled" both "*Roe* and *Casey*." Slip op. 69; *see id.* at 5, 79. It explained that *Roe* and *Casey* were "far outside the bounds of any reasonable interpretation" of the constitutional text, "egregiously wrong," "deeply damaging," "exceptionally weak," and an exercise of "nothing but 'raw judicial power.'" *Id.* at 44–45; *see id.* at 55–56. In overruling *Roe* and *Casey*, moreover, the Supreme Court specifically rejected the "viability line" on which the Seventh Circuit's and this Court's decisions in this case rest. "The viability line," the Supreme Court observed, "makes no sense," is almost "uniformly eschew[ed]" by other countries, and lacks "any cogent justification." *Id.* at 49, 53. The Supreme Court explained that decisions of when, and under what circumstances, to prohibit abortion are instead for "the people and their elected representatives" to make. *Id.* at 69.

Under *Dobbs*, States are free to enact laws that "regulat[e] or prohibit[] abortion." Slip op. at 79. That includes laws that promote "respect for and preservation of prenatal life at *all* stages of development," not just after viability, and that "prevent[] . . . discrimination on the basis of race, sex or disability." *Id.* at 77–78 (emphasis added); *see id.* at 77 ("A law regulating abortion, like other health and welfare laws, is entitled to a 'strong presumption of validity.'"). There thus can be no question that it is lawful for the State to prohibit physicians from performing abortions sought solely because a fetus has a particular race, sex, or other protected characteristic. *Dobbs* specifically sanctions that type of abortion regulation.

## II.  Continued Enforcement of the Declaratory Judgment and Injunction Would Be Detrimental to the Public Interest

Because *Dobbs* expressly permits the State to enact the type of anti-discrimination laws enjoined here, the declaratory judgment and injunction in this case must be dissolved. As the Seventh Circuit has explained, a decree against duly enacted state laws does not "serve[] any federal purpose" where—as here—intervening  precedent establishes that the "underlying claims [a]re not supported by the United States Constitution." *Komyatti v. Bayh*, 96 F.3d 955, 962–63 (7th Cir. 1996) (citing *Barlak v. City of Chicago*, 81 F.3d 658 (7th Cir. 1996)); *see Agostini*, 521 U.S. at 237–38 (vacating injunction due to significant change in Establishment Clause jurisprudence); *Evans v. City of Chicago*, 10 F.3d 474, 479–83 (7th Cir. 1993) (en banc) (plurality op.) (vacating consent decree where intervening precedent established the plaintiffs did not "have a substantial claim under the due process clause"). "When a change in the law authorizes what had previously been forbidden it is an abuse of discretion for a court to refuse to modify an injunction founded on the superseded law." *Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1187 (7th Cir. 1994) (quoting *American Horse Prot. Ass'n v. Watt*, 694 F.2d 1310, 1316 (D.C. Cir. 1982)).

The rule that injunctions may be maintained only as long as necessary to eliminate alleged violations of federal law reflects the judiciary's limited role. *See Milliken v. Bradley*, 433 U.S. 267, 281–82 (1977). Under the Constitution, policymaking responsibility rests with democratically elected officials. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004). Those officials are the ones charged with "deciding how best to discharge their governmental responsibilities." *Id.* Federal courts thus must "'promptly'" return to state officials the power to make and enforce laws where injunctions no longer serve to eliminate alleged constitutional violations. *Horne v. Flores*, 557 U.S. 433, 450 (2009). Maintaining injunctions and declaratory judgments that no longer serve that purpose is "not only unnecessary, but improper." *Id.*

In this case, moreover, the harm goes beyond unwarranted judicial intrusion into the democratic process. The statutory provisions at issue here promote vital state interests. They prevent discrimination based on race, sex, and disability—a "'compelling state interest of the highest order.'" *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987); *see Dobbs*, slip op. at 78 (recognizing "the prevention of discrimination on the basis of race, sex, or disability" is a "legitimate" state interest). They prevent women from being "bullied" into abortions by physicians, ECF No. 54-3, Moon Decl. ¶ 8, who sometimes intentionally overemphasize the negative aspects of disabilities to encourage abortions of Down syndrome, *see* Brian G. Skotko, *With New Prenatal Testing, Will Babies with Down Syndrome Slowly Disappear?,* 94 Archives of Disease in Childhood, 823, 825 (Nov. 2009); *see* ECF No. 76, at 15. And they promote "respect for and preservation of prenatal life at all stages of development." *Dobbs*, slip op. at 78. The Court should "promptly'" return to state officials the power to enforce regulations necessary to protect women and unborn children alike. *Horne*, 557 U.S. at 450.

## CONCLUSION

The Court should vacate the declaratory judgment and injunction concerning Indiana Code sections 16-34-2-1.1(a)(1)(K), 16-34-4-4, 16-34-4-5, 16-34-4-6, 16-34-4-7, 16-34-4-8.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

By:    /s/ Thomas M. Fisher
THOMAS M. FISHER
Solicitor General

JULIA C. PAYNE
Deputy Attorney General

Office of the Attorney General
Indiana Government Center South, Fifth
Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770
Phone: (317) 232-6255
Fax:  (317) 232-7979
Email:  Tom.Fisher@atg.in.gov

*Counsel for Defendants*